## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**EAGLE EXPRESS, INC.,**

      **Plaintiff,**

         **Case No. 1:23-cv-655**

   **v.**

         **JUDGE DOUGLAS R. COLE**

**PAYCOR, INC.,**

      **Defendant.**

## OPINION AND ORDER

This lawsuit centers on a contractual agreement for payroll services between Plaintiff Eagle Express, Inc. (Eagle), and Defendant Paycor, Inc. (Paycor). Eagle alleges that Paycor failed to process Eagle's payroll correctly, thereby breaching the contract and causing Eagle to overpay its employees and overpay taxes. (Compl., Doc. 1). As a result, Eagle asserts a breach-of-contract claim and an unjust enrichment claim. (*Id.* at #4–5). Paycor moves to dismiss the Complaint arguing first that claim preclusion bars Eagle's suit and second that Eagle's own failure to perform prevents it from plausibly stating a breach-of-contract claim. (Doc. 12, #45). Finally, Paycor argues that the Court should dismiss Eagle's unjust enrichment claim because such a quasi-contract remedy is unavailable when an express contract governs. (*Id.* at #54–55). The Court disagrees with the first two arguments but agrees with the third. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss Complaint (Doc. 12) and **DISMISSES** only the unjust enrichment claim **WITH PREJUDICE**.

## BACKGROUND[1]

Eagle is a five-employee Michigan trucking company with a principal place of business in Canton, Michigan. (Doc. 1 ¶¶ 1, 8, #1–2; Doc. 1-2, #14). Paycor, an Ohio corporation with a principal place of business in Cincinnati, Ohio, offers payroll-related services for its clients. (Doc. 1 ¶¶ 2, 9, #1–2). In February 2015, Paycor and Eagle contracted for these services. In that contract, Eagle agreed "timely [to] supply to Paycor accurate and complete data necessary for the performance" of services and in which Paycor agreed to provide payroll and tax services (including check stuffing and online reporting). (*Id.* ¶¶ 12–15, #2–3; Doc. 1-1, #8; Doc. 1-2, #14). The contract further provided that Eagle would "promptly review and verify, for each pay period … the accuracy of all paychecks, disbursements, … [and] reports produced for [Eagle] by Paycor." (Doc. 1-1, #8). Along with basic payroll services, Paycor also contracted with Eagle to calculate Eagle's employees' workers' compensation premiums "based on the [National Council on Compensation Insurance (NCCI)] manual classification(s)." (Doc. 1-3).

On its website, Paycor advertises that it will pay its client's employees "accurately and on time." (Doc. 1 ¶ 10, #2). Around the time the parties executed the above-mentioned contract, Paycor specifically represented to Eagle (though this

---

[1] As this matter comes before the Court on a motion to dismiss, it must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations. Beyond such allegations, the Court also "may take judicial notice of proceedings in other courts of record." *Chappel v. Hunter*, No. 1:23-cv-728, 2024 WL 1307221, at *1 n.1 (S.D. Ohio Mar. 27, 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

representation is not incorporated as part of the contract) that Paycor would pay Eagle's employees "accurately and on time." (*Id.* ¶ 11, #2).

According to Eagle, Paycor broke that promise. Paycor allegedly inaccurately calculated Eagle's payroll obligations by effectively double counting Eagle's employees' per diem amount. Namely, Paycor first included the per diem amount, a line item that is not taxable, in Eagle employees' gross pay prior to applying taxes (thereby increasing Eagle's overall tax liability). (*Id.* ¶¶ 17, 19, #3). Paycor then added the per diem amount again to Eagle employees' net pay, resulting in Eagle overpaying its employees. (*Id.* ¶¶ 18–19, #3). In addition to those payroll errors, Paycor also allegedly failed to calculate Eagle employees' worker's compensation premiums based on NCCI manual classifications. (*Id.* ¶ 21, #3).

Based on these concerns, Eagle sued in Michigan state court naming "Paycor HCM, Inc.," a Delaware corporation, as the sole defendant and asserting the same factual allegations asserted in the Complaint here. (Doc. 12-1, #58–60). Eagle raised three claims in that first suit: a breach-of-contract claim, a negligence claim, and a breach-of-fiduciary-duty claim. (*Id.* at #60–62). But Eagle voluntarily dismissed that suit without prejudice on April 25, 2023. (Doc. 12-2, #66). Eagle then filed a second lawsuit in the same Michigan state court, this time naming Paycor (the defendant here) as the sole defendant and raising the same allegations and claims. (Doc. 12-3). Paycor removed that second lawsuit Eagle filed (although the first as against Paycor as a defendant) to the United States District Court for the Eastern District of

Michigan. (Doc. 12-4, #78–79). Less than a month later, Eagle voluntarily dismissed that case without prejudice. (*Id*. at #79).

Eagle then sued in this Court raising the same set of factual allegations, but this time asserting only two claims: a breach-of-contract claim and an unjust enrichment claim. (Doc. 1). Eagle requests $570,000 in damages. (*Id*. #5). Paycor moved to dismiss arguing that Eagle's claims are precluded by Eagle's voluntary dismissals of the two prior Michigan lawsuits. (Doc. 12, #51–53). Paycor alternatively argues that Eagle failed to allege a plausible breach-of-contract claim because Eagle purportedly failed "promptly [to] review and [to] verify" the accuracy of Paycor's disbursements, which was a duty that the contract imposed on Eagle. (*Id*. at #53–54). Lastly, Paycor asks the Court to dismiss the unjust enrichment claim because, as a quasi-contractual remedy, Eagle may not assert such a remedy when an express contract governs the relationship between itself and Paycor. (*Id*. at #54–55). Eagle responded (Doc. 13) and Paycor replied (Doc. 14). The matter is ripe for review.

### JURISDICTION AND CHOICE OF LAW

The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. (Doc. 1, #1, 5).

Because the Court is sitting in diversity, the Court applies state law to resolve the substance of Eagle's state-law claims.[2] But the first question, of course, is the

---

[2] As discussed below, the claim-preclusive effect that this Court affords the previous dismissal of the (second) action in the federal court in Michigan is governed by federal law, rather than state law, and thus is not subject to the same choice-of-law considerations that govern the

4

laws of which state? Federal courts sitting in diversity apply the choice-of-law principles of the forum state—here, Ohio. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Under Ohio choice-of-law principles, a contract's choice-of-law provision governs unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983) (citing Restatement (Second) of the Conflict of Laws § 187 (Am. L. Inst. 1971)). Here, the parties' contract states that Ohio law will govern. (Doc. 1-1, #11). Paycor is located in Ohio, does business in Ohio, and presumably performs its contractual duties in Ohio. (Doc. 1 ¶¶ 2–3, #1). The parties therefore had a "reasonable basis" for their choice of law, so the Court will enforce the provision and apply Ohio law to Eagle's breach-of-contract claim. And because Eagle's unjust enrichment claim relies on a theory of implied contract, Ohio law applies to that claim as well. *See Unifund CCR Partners Assignee of Palisades Collection, LLC v. Childs*, 2010-Ohio-746, ¶¶ 17–18 (2d Dist.) (holding that same law governs express and implied contract claims); *accord Lion Fed. Credit Union v. Worldpay, LLC*, No. 1:24-cv-163, 2024 WL 1704551, at *3–*5 (S.D. Ohio Apr. 19, 2024).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is

---

*substance* of Eagle's claims. *See generally Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001).

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.* At the motion-to-dismiss stage, the Court accepts the well-pleaded facts in the complaint as true. *Id.* The Court may also take notice of matters of public record and exhibits attached to the complaint. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023); *see also supra* note 1. The Court may not, however, apart from those limited exceptions, rely on matters outside the pleadings or make factual findings at the motion-to-dismiss stage. *See* Fed. R. Civ. P. 12(d); *Bacon v. Subway Sandwiches & Salads LLC*, No. 3:14-cv-192, 2015 WL 729632, at *5 (E.D. Tenn. Feb. 19, 2015).

## LAW AND ANALYSIS

Paycor raises three separate arguments, one directed at the suit as a whole (claim preclusion), one directed at the breach-of-contract claim (that the claim fails as a matter of law due to Eagle's own breach), and one directed at the unjust enrichment claim (that it cannot proceed in light of the undisputed existence of a valid contract here). The Court addresses them in that order.

### A.  Claim Preclusion

Paycor first argues that Eagle's claims here are barred by claim preclusion, given Eagle's voluntary dismissal of the second Michigan lawsuit. Although that suit began in state court, the dismissal occurred after Paycor removed the action to a

6

Michigan federal court sitting in diversity. (Doc. 12-4, #79; Doc. 12-5, #81). As a result, Paycor seeks to take advantage of the language in Federal Rule of Civil Procedure 41(a)(1)(B) providing that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." And relying on the phrase "adjudicated on the merits," Paycor now argues the claim-preclusive effect of that dismissal bars the suit here. The Court concludes that the rule's language does not lead to the result Paycor seeks—but explaining why is somewhat involved.

As noted, the second dismissal occurred in a federal court diversity action. And the Supreme Court has held that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). But while federal common law 'governs' the claim-preclusive effect in the sense that federal law provides the source of authority, *see* U.S. Const. Art. VI, the Supreme Court also made clear in *Semtek* that the *substance* of that federal rule is this: a dismissal in a diversity case is entitled to the same preclusive effect "that would be applied by state courts in the State in which the federal diversity court sits." *Id.* In short, as a matter of federal law, the federal diversity court's dismissal obtains whatever claim-preclusive effect it would have had as a matter of state law, had the dismissal instead occurred in a state court located in the state in which that federal court sits. So, because the dismissal at issue here occurred in the Eastern District of Michigan, the *Semtek* rule requires this Court to apply the same claim-preclusion rule that would apply under Michigan law had

the dismissal instead occurred in a Michigan state court. *Id.* at 509 (holding that California's law of claim preclusion governed the claim preclusive effect of a California federal court's dismissal of an action under Rule 41(b)).

Michigan law precludes a plaintiff from filing a new action when three elements are all present: (1) there was a prior action that was "decided on the merits," (2) both the new action and the previous action involve the same parties or their privies, and (3) the claim the plaintiff seeks to raise in the new action was resolved or could have been resolved in the prior suit. *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). Here, neither party disputes that the second Michigan lawsuit (which named the defendant here, Paycor, Inc., and ended up dismissed from a Michigan federal court) involved the same parties and the same claims as this third suit. The only question, then, is whether the dismissal of that prior action (the second Michigan lawsuit) counts as "decided on the merits."

The parties assume that the answer to this adjudicated-on-the-merits question is governed by the above-quoted language from Federal Rule of Civil Procedure 41(a)(1)(B). (Doc. 12, #52–53; Doc. 13, #86–88). Recall, under that language, "*if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim*, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B) (emphasis added). So—the parties argue—the question in this (the third) case is whether the first Michigan suit (which was dismissed from state court) was "based on" or "includ[ed]" the "same claim" as the second Michigan suit (which was dismissed from federal court) such that Rule 41(a)(1)(B), by operation of

8

law, renders the second dismissal (which occurred in federal court) an adjudication on the merits.

The parties' instinct to look to Federal Rule 41 is understandable. After all, federal courts are governed by the Federal Rules of Civil Procedure unless such rule violates the Rules Enabling Act or the Constitution itself. *See Hanna v. Plumer*, 380 U.S. 460, 469–74 (1965). And Rule 41(a)(1)(B) seems to govern the exact situation described here—a second voluntary dismissal, which occurred in federal court. Moreover, at first glance, *Semtek* seems to suggest that different standards can govern the adjudicated-on-the-merits prong and the claim-preclusion rule more broadly, such that relying on Rule 41 for the first might not run afoul of *Semtek*'s look-to-state-law rule for the latter. *See Semtek*, 531 U.S. at 501–02 (differentiating between judgments denominated "on the merits" from judgments entitled to "claim-preclusive effect"). But on closer review, *Semtek* requires that this Court not just apply Michigan's claim-preclusion rule more broadly, but further requires the Court to use Michigan substantive law to determine whether Eagle's second dismissal was an "adjudication on the merits," rather than merely relying on the language in Rule 41(a)(1)(B) that would otherwise seem to answer that question.

In *Semtek*, a plaintiff brought several California common law claims in California state court. 531 U.S. at 499. The defendant removed the action to California federal court based on diversity jurisdiction. *Id.* The defendant then moved to dismiss asserting that California's statute of limitations barred the claims. *Id.* The California federal court dismissed the claims with prejudice on that basis. *Id.* The

plaintiff then filed a second action asserting the same type of claims, but this time under Maryland substantive law and in a Maryland state court. *Id.* at 499–500. Upon defendant's motion, the Maryland state court dismissed the second action as barred by res judicata. *Id.* at 500. But in doing so, the Maryland state court held that, because the California dismissal occurred in a *federal* court, federal substantive law governed the California preclusive effect of that dismissal, which thereby automatically barred plaintiff's claims. *Id.*

Before the Supreme Court, the defendant tried to defend that result by reference to certain other language in Federal Rule of Civil Procedure 41, language not directly relevant here. Specifically, the *Semtek* defendant pointed to Rule 41(b), which states that by default court-ordered dismissals are with prejudice and adjudicated on the merits. *Id.* at 501. According to that defendant, this language applied, which meant that the California federal court's judgment automatically barred subsequent actions on the same claims as a matter of federal law. *Id.*

The Supreme Court disagreed. It noted that the question whether a claim is 'adjudicated on the merits' is distinct from whether that judgment precludes subsequent actions on the same claims (the claim-preclusive effect). *Id.* at 501–03. As to the latter, the Court observed that Rule 41(b) could not act as a claim-preclusion rule because, understood that way, Rule 41 would likely violate the Rules Enabling Act in that it would abridge a substantive right—the right to assert a cause of action. *Id.* at 503–04. And as to the threshold question—that is, whether the claims were adjudicated on the merits in the claim-preclusive sense—the Court held Rule 41's use

10

of the language "adjudicated on the merits" simply meant the district court had "dismissed [the claims] with prejudice." *Id.* at 505–06. In other words, Rule 41 operated as a claims-processing rule, which forbade the plaintiff from refiling the action in the same court. *Id.* Rule 41 did not, however, determine whether the content of the plaintiff's claims was "adjudicated on the merits" in the claim-preclusive sense rather than dismissed by the court on some other non-merits ground. *Id.* at 506–07. Rather, the rule controlled only whether the judgment was considered final by the adjudicating court.[3]

So how *did* the Supreme Court determine whether the content of the plaintiff's claims was "adjudicated on the merits"? The Court did not explicitly say in *Semtek*, because it was not an issue there. But the Court implied that, in diversity cases, federal law adopts state substantive law to determine whether the ground for dismissal in the federal-court diversity action was merits-based or not. *See id.* at 504 ("With regard to the claim-preclusion issue involved in the present case, for example, the traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods."); *id.* at 509 ("Because the claim-preclusive effect of the California federal court's dismissal 'upon the merits' of petitioner's action *on*

---

[3] Finality is no doubt one component of whether a court "adjudicated" a claim on the merits, which is why the *Semtek* Court stated that it was a necessary but not sufficient condition for the application of a substantive claim-preclusion rule. *See Semtek*, 531 U.S. at 506. But the finality of a judgment should not be conflated with the reasons or grounds behind the judgment.

*statute-of-limitations grounds* is governed by a federal rule that in turn incorporates California's law of claim preclusion[,] … [t]he judgment is reversed." (emphasis added)). That is, in deciding whether a dismissal on statute of limitations ground was an 'adjudication on the merits,' the Court looked to "the traditional rule" and noted that the federal rule would "incorporate[] California's law," both of which suggest that this was a matter of (adopted) state law. *Id.* at 504, 509.

But here, unlike in *Semtek*, there are no stated *grounds* for dismissal—that is, no court has explained why the case has been dismissed. Rather, Eagle simply filed a notice of dismissal, unadorned with any reasons rooted in any substantive law to explain that act. The question in this case, then, is whether, under Michigan law, that act, in and of itself, renders the dismissal a merits-based decision for the purposes of claim preclusion.

No Michigan case law (at least no case law that the Court could find) speaks directly to this question. But the Michigan Supreme Court has adopted, as a Michigan Court Rule of Civil Procedure,[4] a rule almost identical to Federal Rule of Civil Procedure 41(a)(1)(B). *Compare* Fed. R. Civ. P. 41(a)(1)(B) *with* Mich. Ct. R. 2.504(A)(1) (second dismissal of "an action in any court based on or including the same claim" operates as "an adjudication on the merits"). Given the overlap, it is

---

[4] While the Court admits it seems odd to consult a state procedural rule to evaluate the effect of a federal judgment, the alternative would be problematic. If the Court conflated the finality of a federal court judgment (determined by the Federal Rules of Civil Procedure) with whether those judgments pass on the merits of a state law claim (which is itself a state law question), then it would be forced to conclude that Federal Rule of Civil Procedure 41(a)(1)(B) alone operates to extinguish a cause of action. That exceeds the bounds of what a rule of civil procedure may do under the Rules Enabling Act. 28 U.S.C. § 2072(b).

likely that Michigan courts would interpret the phrase "based on or including the same claim" similarly to how federal courts interpret Rule 41(a)(1)(B)'s use of the same phrase. In fact, one unpublished Michigan court case has taken exactly that position implying that this Court should understand Michigan claim preclusion law to treat a second dismissal in federal court the same way as federal courts have interpreted second dismissals under Rule 41(a)(1)(B). *See Zlatkin v. Merit Energy Co.*, No. 336857, 2018 WL 521974, at *5, *8–*9 (Mich. Ct. App. Jan. 23, 2018). In other words, while the federal rule (under *Semtek*) commands this Court to incorporate Michigan law in assessing claim-preclusion issues, the similarity in the wording of the Michigan rule and Rule 41 suggests that Michigan courts would in turn rely on Rule 41 case law in interpreting their own Rule 2.504. That is a roundabout way of saying that, at least on the facts here, it may not matter whether Rule 41 or the state procedural rule provides the source for the answer to the "adjudicated on the merits" question, as here the language of both is the same and there is no case-law based reason this Court could identify to conclude that Michigan state courts would interpret the language in Michigan Court Rule 2.504 any differently from how federal courts interpret that same language in Federal Rule of Civil Procedure 41. (In fact, as noted above, there is one non-precedential Michigan case suggesting the opposite: that there is parity between the federal and state two-dismissal rules. *Zlatkin*, 2018 WL 521974, at *5, *8.).

When construing Rule 41's language, and most importantly here Rule 41's reference to a previous dismissal of a case involving "the same claim," federal courts

"import[] res-judicata principles." *Jian Ying Lin v. Shanghai City Corp.*, 329 F.R.D. 36, 41 (S.D.N.Y. 2018), *aff'd sub nom. Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 50 (2d Cir. 2020) (same); *Axon Enter. Inc. v. Vievu LLC*, No. CV-17-01632, 2018 WL 317289, at *2 (D. Ariz. Jan. 5, 2018) ("[T]he Court considers whether Plaintiff's claims are the same as those in the related actions under the res judicata analysis." (cleaned up)). Under federal common law res judicata principles, a subsequent claim is the "same" as a prior claim when both claims (1) involve a legal cause of action arising out of the same transaction or occurrence that (2) is asserted against the same party or its privies. *See Jian Yang Lin*, 950 F.3d at 48 ("This action is based on the same operative facts and names the same defendants."); *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 17 (1st Cir. 2004) ("The two dismissal rule is not applicable unless the defendants are the same … or in privity in both actions." (cleaned up)); *see Evans v. Laborers' Dist. Council & Contractors' Pension Fund of Ohio*, 602 F. App'x 608, 614–15 (6th Cir. 2015) (evaluating whether the parties sued in the first and second action were in privity); Restatement (Second) of Judgments § 24 (1982) ("The claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction … out of which the action arose." (cleaned up)). So "the same claim" under Rule 41 is a *term of art* that looks both to the legal causes of actions raised *and* the parties against whom they are asserted.

Treating Michigan law as adopting the same analysis for its own rule, the Court must determine whether, under Michigan privity principles, Paycor HCM, Inc.,

14

and Paycor, Inc., are privies to establish whether Eagle's first suit against Paycor HCM, Inc., and Eagle's second suit against Paycor, Inc., involved the "same claim" (in the term-of-art sense "same claim" is used in Federal Rule of Civil Procedure 41). Under Michigan law, privity is a "mutual or successive relationships to the same right of property." *Mitan v. Bouchard*, No. 358232, 2023 WL 3772310, at *4 (Mich. Ct. App. June 1, 2023) (citation omitted), *appeal denied*, 1 N.W.3d 285 (Mich. 2024). Privity is therefore established whenever a successor party "has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Id.* (citation omitted). Paycor does not allege that it and Paycor HCM, Inc., share a successive relationship as to the underlying contract with Eagle. So for Michigan-law purposes, the first two suits did not involve privies and thus did not involve the "same claim." And because the first two suits did not involve the same claim, Michigan courts would not consider the second dismissal (had it occurred in a Michigan state court) "on the merits" for claim preclusion purposes.

Paycor resists this conclusion, not by arguing that privity should not matter, but rather by arguing that, on the allegations here, it is in privity with Paycor HCM, Inc., because Paycor, Inc., is a wholly controlled subsidiary of Paycor HCM, Inc. (*See* Doc. 12, #49 n.1; Doc. 14, #121–22).[5] But Paycor fails to cite any Michigan law establishing that a wholly controlled subsidiary is in privity with the parent as to a

---

[5] Paycor cites a 10-K form filed with the Securities and Exchange Commission. (Doc. 12, #49 n.1). The Court may properly take judicial notice of this form. *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 969 (S.D. Ohio 2009).

contract in which the parent has no legal interest. *Cf. Zlatkin*, 2018 WL 521974, at
*8 (concluding the parent and subsidiary corporations were in privity only because of
an uncontroverted affidavit establishing that both entities "shared common
ownership" of the "facility from which … pollutants were emitted," which pollutants
caused damage serving as the factual basis for the claims raised).

Moreover, the argument is unpersuasive. A corporation is a legally distinct
'person' and bears its own obligations apart from those of its shareholders (even when
the shareholder is a parent corporation that owns 100% of the stock). *See In re
Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 166 F. Supp. 3d 948, 963–
64 (W.D. Tenn. 2014). It would defy the logic of the corporate form for the law, on the
one hand, to immunize a subsidiary corporation from the debts and liabilities of, and
judgments against, its parent due to the separateness between the two entities, but
then, on the other, to allow the subsidiary to rely on judgments in the parent's favor
(for example, a dismissal in favor of the parent) to bar a subsequent suit against the
subsidiary on privity grounds.

In sum, because Paycor, Inc., and Paycor HCM, Inc., are not in privity as to
the contract with Eagle, the first two suits did not involve the "same claim" as that
term of art is used. And because the first two suits did not involve the "same claim,"
Eagle's second dismissal did not operate as an adjudication on the merits for
Michigan claim preclusion purposes. Then finally, because the second dismissal was

not adjudicated on the merits—which is a requirement for claim preclusion under Michigan law—claim preclusion cannot bar Eagle's claim in this Court.[6]

## B.    Plausibility of the Breach-of-Contract Claim

Beyond claim preclusion, Paycor separately argues that Eagle has failed to state a plausible breach-of-contract claim because it purportedly did not "promptly review and verify" the accuracy of Paycor's disbursements, thereby violating the contract. (Doc. 12, #53–54). "The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Becker v. Direct Energy, LP*, 112 N.E.3d 978, 988 (Ohio Ct. App. 2018) (cleaned up). If a party materially breaches a contract, the counterparty's duties under the contract are discharged. *Lamar Advantage GP Co. v. Patel*, 2012-Ohio-3319, ¶ 26 (12th Dist.). A party materially breaches a contract when it fails to perform a duty "so fundamental to [the] contract that the failure to perform defeats the essential purpose of the contract." *Id.* (citation omitted). But if a party's breach is minor rather than material, the counterparty still has a duty to perform under the contract (even though it also has a right to recover any damages incurred as a result of the non-material breach). *Id.*; *see Thanh Dinh Le v. Shan Gui Li*, 2019-Ohio-5269, ¶ 13 n.6 (2d Dist.).

---

[6] The Court also notes that another route may lead to this same destination. It appears from the parties' papers that Paycor may have encouraged Eagle to file a voluntarily dismissal of its action in Michigan federal court as the easiest and most efficient way to move the action to this Court. (*See* Doc. 13, #85). Depending on the facts surrounding those discussions, estoppel (or implied waiver) may also come into play with regard to Paycor's efforts to defend on claim-preclusion grounds now.

17

Paycor contends that Eagle did not plausibly allege its own performance because the damages it requests, $570,000, combined with Eagle's recent discovery of Paycor's errors, implies that Eagle did not notice the error for several pay periods and that this oversight constituted a material breach of the contract's prompt-review provision. (Doc. 12, #53–54; Doc. 14, #124–25). But that conclusion does not follow from the premise. As far as the Court can tell from the allegations, Eagle could have both sustained $570,000 in damages and complied with the prompt-review provision. That is, the Court cannot infer, based solely on the size of Eagle's damages request—and especially without some further factual context—that Eagle did not promptly inform Paycor of its payroll errors. Sure, it may be that Eagle belatedly discovered Paycor's errors, but it is at least *plausible* that Eagle complied with the provision. And answering which is correct here would require consideration of information well beyond the four corners of the Complaint, which is inappropriate at the 12(b)(6) stage. Moreover, even if Eagle did not promptly review the accuracy of Paycor's services, there is the separate question whether that breach would completely discharge Paycor's performance, rather than simply reduce its liability. And on that front, materiality tends to be a fact-specific inquiry, which makes it a difficult fit for a motion to dismiss. *Whitt Sturtevant, LLP v. NC Plaza LLC*, 43 N.E.3d 19, 30 (Ohio Ct. App. 2015) ("The determination of whether a party's breach of a contract was a 'material breach' is generally a question of fact."). So, for both of these reasons, the breach-of-contract claim may survive dismissal.

18

**C.     Unjust Enrichment**

Paycor asks the Court to dismiss the unjust enrichment claim because it is unavailable where an express contract governs the parties' relationship. (Doc. 12, #54–55). Eagle states that it does not seek double recovery and is willing to dismiss the claim if Paycor admits the enforceability of the parties' express contract. (Doc. 13, #90). Paycor has done so. (Doc. 14, #127). So the Court **DISMISSES** this claim **WITH PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Paycor's motion to dismiss (Doc. 12). The Court **DISMISSES** the unjust enrichment claim (Count II) **WITH PREJUDICE** but **DENIES** the motion as to the breach-of-contract claim.

**SO ORDERED.**

April 30, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

19